**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

LAURENE L. TUCKER,

                                        Plaintiff,

            - v -                                          Civ. No. 1:04-CV-1327
                                                                        (FJS/RFT)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

**APPEARANCES:**                                          **OF COUNSEL:**

ERWIN, MCCAIN LAW FIRM                          THOMAS C. ERWIN, ESQ.
Attorney for Plaintiff
23 Elk Street
Albany, New York 12207

HON. GLENN T. SUDDABY                            WILLIAM H. PEASE
United States Attorney for the Northern District of New York   Assistant United States Attorney
Attorney for Defendant
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

In this action, Plaintiff Laurene Tucker moves, pursuant to 42 U.S.C. § 405(g), for review of

a decision by the Commissioner of Social Security denying her application for Disability Insurance

Benefits (DIB) and Supplemental Security Income (SSI).[1]  Based upon the following discussion, this

Court recommends that the Commissioner's decision denying Social Security benefits be **affirmed**.

---

[1] This case has proceeded in accordance with General Order 18 which sets forth the procedures to be followed when appealing a denial of Social Security benefits.  Both parties have filed briefs, though oral argument was not heard.  Dkt. Nos. 5 & 7.  The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

## I. BACKGROUND

### A. Facts

The facts set forth in Tucker's Brief under the heading "STATEMENT OF FACTS" as supplemented in the Commissioner's Brief under the heading "STATEMENT OF FACTS" are adopted, with the exception of any inferences or legal conclusions expressed therein. Dkt. No. 5, Pl.'s Br. at pp. 3-7; Dkt. No. 7, Def.'s Br. at pp. 1-9.  Generally, Tucker alleges a disability due to degenerative disc disease in her lumbosacral spine, which occurred when she fell on August 29, 2002, while walking up the driveway to her home.  Dkt. No. 4, Admin. Transcript [hereinafter "Tr."] at pp. 22, 40-41, & 101.

### B. Procedural History

On October 4, 2002, Tucker filed for DIB and SSI alleging a disability onset date of September 16, 2002.  Tr. at pp. 90-92.  Those applications were denied initially.  *Id.* at pp. 63-68.  On February 17, 2004, a Hearing was held before Administrative Law Judge (ALJ) Thomas P. Zolezzi (*Id.* at pp. 30-62), and on March 16, 2004, the ALJ issued an unfavorable decision against Tucker (*Id.* at pp. 21-29).  On September 18, 2004, the Appeals Council concluded there was no basis under the Social Security Regulations to grant Plaintiff's request for review, thus rendering the ALJ's decision the final determination of the Commissioner.  *Id.* at pp. 6-8.  Exhausting all her options for review through the Social Security Administration's tribunals, Plaintiff now brings this appeal.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), the proper standard of review for this Court is not to employ a *de novo* review, but rather to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied.  *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d

Cir. 1991); *Urtz v. Callahan*, 965 F. Supp. 324, 325-26 (N.D.N.Y. 1997) (citing, *inter alia*, *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Succinctly defined, substantial evidence is "more than a mere scintilla," it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

The ALJ must set forth the crucial factors supporting the decision with sufficient specificity. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record. *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); 42 U.S.C. § 405(g). Where the weight of the evidence, however, does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed. *Johnson v. Bowen*, 817 F.2d at 986.

### B. Determination of Disability

To be considered disabled within the meaning of the Social Security Act, a plaintiff must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore, the claimant's physical or mental impairments must be of such severity as to prevent engagement in any kind of substantial gainful work which exists in the national economy. *Id*. at § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner follows a five-step analysis set forth in the Social Security Administration Regulations. 20 C.F.R. §§ 404.1520 & 416.920. At Step One, the Commissioner "considers whether the claimant is currently engaged in gainful activity."

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).  If the claimant is engaged in substantial gainful activity, he or she is not disabled and the inquiry ends.  20 C.F.R. §§ 404.1520(b) & 416.920(b).  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to Step Two and assesses whether the claimant suffers from a severe impairment that significantly limits his or her physical or mental ability to do basic work activities.  *Id.* at §§ 404.1520(c) & 416.920(c).  If the claimant suffers from a severe impairment, the Commissioner considers at Step Three whether such impairment(s) meets or equals an impairment listed in Appendix 1, in Part 404, Subpart P of the Regulations.  *Id.* at §§ 404.1520(d) & 416.920(d).  The Commissioner makes this assessment without considering vocational factors such as age, education, and work experience.  *Berry v. Schweiker*, 675 F.2d at 467.  Where the claimant has such an impairment the inquiry ceases as he or she is presumed to be disabled and unable to perform substantial gainful activity.  *Id.*  If the claimant's impairment(s) does not meet or equal the listed impairments, the Commissioner proceeds to Step Four and considers whether the claimant has the residual functional capacity (RFC)[2] to perform his or her past relevant work despite the existence of severe impairments.  20 C.F.R. §§ 404.1520(e) & 416.920(e).  If the claimant cannot perform his or her past work, then at Step Five, the Commissioner considers whether the claimant can perform any other work available in the national economy.  *Berry v. Schweiker*, 675 F.2d at 467; 20 C.F.R. §§ 404.1520(f) & 416.920(f).

Initially, the burden of proof lies with the claimant to show that his or her impairment(s) prevents a return to previous employment (Steps One through Four).  *Berry v. Schweiker*, 675 F.2d at 467.  If the claimant meets that burden, the burden then shifts to the Commissioner at Step Five to

---

[2] "Residual functional capacity" is defined by the Regulations as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting.  Your residual functional capacity is what you can still do despite your limitations."  20 C.F.R. §§ 404.1545(a) & 416.945(a).

establish, with specific reference to medical evidence, that the claimant's physical and/or mental impairment(s) are not of such severity as to prevent him or her from performing work that is available within the national economy.  *Id.*; 42 U.S.C. § 423(d)(2)(A); *see also White v. Sec'y of Health and Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990).  In making this showing at Step Five, the claimant's RFC must be considered along with other vocational factors such as age, education, past work experience, and transferability of skills.  20 C.F.R. §§ 404.1520(f) & 416.920(f); *see also New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

### C.  ALJ Zolezzi's Findings

Tucker was the only witness to testify at the Hearing.  Tr. at pp. 30-62.  In addition to such testimony, the ALJ had Tucker's medical records consisting of treatment reports and opinions from various treating, examining, and/or consulting physicians, including, 1) Richard Jones, M.D., Treating Physician; 2) Jonathan Insel, M.D., Treating Physician; 3) Zandra Rios-Rivera, M.D., Primary Care Physician; 4) S. Richard Cavoli, M.D.; 5) Donald Clark, Physical Therapist; 6) Patricia Califano, Registered Nurse; 7) Amelita Balagtas, M.D., Consultive Examiner; 8) David L. Semenoff, M.D., Neurologist; 9) Christopher D. DeCamp, M.D., Orthopedic Specialist; and 10) John T. Whalen, M.D., Orthopedic Specialist.  *Id.* at pp. 127-220.

The ALJ stated that Tucker met the nondisability requirements and was insured for benefits through the date of the decision.  *Id.* at p. 22.  Using the five-step disability evaluation, ALJ Zolezzi found that 1) Tucker had not engaged in any substantial gainful activity since September 16, 2002, the alleged onset disability date; 2) she has severe medically determinable impairments, namely, degenerative disc disease of the lumbar spine and a bulging disc; 3) her severe impairments did not meet nor medically equal any of the impairments listed in Appendix 1, Subpart P of Social Security

Regulation No. 4; 4) she retains the RFC to perform a full range of sedentary work and, as such, cannot perform her past relevant work as a sales manager in a department store; and 5) based on Tucker's RFC, a finding of "not disabled" is directed by the Medical Vocational Guidelines (the Grids). *Id.* at pp. 28-29.   After reviewing the administrative transcript, the Court finds that the ALJ applied the correct legal standards and his findings are supported by substantial evidence of record.

### D.  Tucker's Contentions

Plaintiff contends that the ALJ's decision denying benefits should be reversed and remanded because (1) at Step Four, the ALJ: (a) erred in finding Plaintiff had the RFC to perform a full range of sedentary work; (b) failed to contact Plaintiff's treating physicians to obtain assessments of her ability to do work-related activities; and (c) improperly evaluated Plaintiff's credibility with regard to her daily physical limitations and ability to perform substantial gainful activity at any exertional level; and (2) at Step Five, the ALJ erred by relying solely on the Grids in determining disability as Plaintiff does not meet the exertional demands at any exertional level.  *See generally* Pl.'s Br.

### 1.  Step Four

As indicated above, Plaintiff's arguments on appeal with regard to the ALJ's Step Four determinations are three-fold.  The Court will address each of her contentions *seriatim*.

### a. RFC

Plaintiff alleges that the ALJ's RFC assessment was not supported by substantial evidence in the record.  Pl.'s Br. at pp. 8-9.  In evaluating Plaintiff's RFC, the ALJ stated that no treating physician had provided an opinion as to her ability to meet the exertional demands of work-related tasks, though they were contacted to furnish such an opinion.  Tr. at p. 25.  However, at the request of the State Agency, a consultive examiner rendered an assessment of Plaintiff's physical RFC.  *Id.*  In conjunction

with this assessment, the ALJ incorporated other medical findings supplied by Plaintiff's treating physicians and concluded that Plaintiff retained the RFC to perform the demands of a full range of sedentary work.[3]  Given that her past work as a retail sales manager exceeded her RFC, the ALJ determined she could no longer perform such work.  *Id.* at pp. 25-27.

Under Step Four of the disability analysis, the Commissioner assesses a claimant's RFC as a basis for determining the particular types of work the claimant may be able to perform despite the existence of physical and/or mental impairments.  *See* 20 C.F.R. §§ 404.1545(a) & 416.945(a).  If the applicant can still perform the kind of work he or she performed in the past, they are deemed not disabled.  *Id*. at §§ 404.1520(e) & 416.920(e).  In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the plaintiff's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe.  *Id*. at §§ 404.1545(a) & 416.945(a).

In this case, the ALJ's determination of Plaintiff's RFC is supported by substantial evidence in the record.  As required by the Regulations, the ALJ based his decision on the medical evidence, RFC assessments of Plaintiff's work-related capabilities, Plaintiff's testimony at the Hearing regarding the components of her job, and her statements that she was unable to fully perform many of her routine daily activities.

The medical evidence established that Plaintiff was diagnosed with L5-S1 degenerative disc disease by Drs. Jonathan Insel and Zandra Rios-Rivera, her treating physicians, as well as Drs.

---

[3] Sedentary work involves:
lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a) & 416.967(a).

Christopher DeCamp and John Whalen, orthopedic specialists.  Tr. at pp. 136-39, 205-06, & 211.
Shortly after the accident occurred, Dr. Richard Jones, another treating physician, found slight
tenderness in the base of her neck with a fair range of motion, good range of motion with slight
tenderness in the deltoid region of her right shoulder, and mild tenderness in both paralumbar areas in
the lower back, but, he found no significant midline tenderness and a fair range of motion with some
pain with lateral flexion.  *Id.* at p. 129.  Thereafter, on September 16, 2002, an Electromyography
(EMG), requested by Dr. Insel, revealed there was no electrodiagnostic evidence of radiculopathy[4] in
either the lower extremities or lumbar spine.  *Id.* at pp. 173-74.  Two days later, Plaintiff underwent a
Magnetic Resonance Imaging (MRI) and Dr. S. Richard Cavoli concluded that the MRI showed the
presence of the degenerative disc disease at L5-S1, but revealed that the remainder of the lumbar spine
was normal.  *Id.* at p. 135.

On October 9, 2002, Dr. Insel examined Plaintiff and found no abnormality in her gait.  *Id.* at
pp. 136-39.  However, on this same occasion, Dr. Insel stated he could not provide a medical opinion
regarding Plaintiff's ability to do work-related activities.  *Id.* at p. 138.  Then, on October 24, 2002,
Consultive Examiner Amelita Balagtas, M.D., reported that there was limited range of motion of
Plaintiff's cervical spine and of the lumber spine in her lower back and that straight leg raising was
limited by hamstring tightness.  *Id.* at 153-54.  However, Dr. Balagtas found there was full range of
motion in Plaintiff's upper and lower extremities, hand and finger dexterity was intact, and grip strength
was 5/5.  *Id.* at pp. 154-55.  She also noted that Plaintiff could groom, dress, and take care of herself
as well as drive.  *Id.* at p. 153.  Though Plaintiff brought a cane to the examination, Dr. Balagtas felt
it was not medically necessary and observed that Plaintiff needed no help in changing for the

---

[4] Radiculopathy is a disease of the spinal nerve roots.  THE AMERICAN HERITAGE MEDICAL DICTIONARY 694
(Revised ed. 2007).

examination or getting on or off the examining table. *Id*. at p. 154. Based on the evaluation, Dr. Balagtas determined that Plaintiff had some limitations in activities requiring "bending, lifting, prolonged sitting, standing, and in overhead activities." *Id.* at p. 155.

Subsequently, on November 13, 2002, Dr. David L. Semenoff conducted a neurological consultation and found Plaintiff was "neurologically intact." *Id.* at pp. 194-96. Dr. Semenoff recommended that Plaintiff be treated conservatively, not operatively, and suggested a referral to a pain management physician or orthopedic surgeon.[5] *Id.* at p. 195. Approximately one month later, a State Agency Consultive Physician[6] completed a Physical RFC Assessment and opined that Plaintiff could: 1) occasionally lift and/or carry ten pounds; 2) frequently lift and/or carry less than ten pounds; 3) stand and/or walk for at least two hours in an eight-hour work day; 4) sit for approximately six hours in an eight-hour workday; and 4) was unlimited in her ability to push and/or pull. *Id.* at pp. 157-64. The consultive physician also indicated that Plaintiff was occasionally limited in her abilities to climb, balance, stoop, kneel, crouch, and crawl, but there were no manipulative, visual, communicative, nor environmental limitations. *Id.* at 158-61. Then, on December 24, 2002, Plaintiff's primary care physician, Dr. Rios-Rivera, was given an opportunity to evaluate her ability to do work-related activities, but chose not to provide an opinion on the subject. *Id.* at p. 127.

Thereafter, on December 31, 2002, Dr. DeCamp examined Plaintiff and noted that she walked with a normal gait and stance and, though her lower back was tender in the right sacroiliac area, Tucker was able to bend forward to ninety degrees, extension was good, straight leg raises were negative, and

---

[5] Prior to this examination, Plaintiff began a regiment of physical therapy with Donald Clark, a physical therapist, and massage therapy with Patricia Califano, a registered nurse. Tr. at pp. 144-52 & 197-204. Both forms of treatment seemed to be effective in alleviating some of the pain felt by Tucker. *Id.*

[6] The name of the State Agency Consultive Physician who conducted the assessment is indecipherable. *See* Tr. at 164.

muscle strength was 5/5.  *Id.* at pp. 205-06.  Dr. DeCamp recommended the use of epidural steroid injections, which were administered a few months later.  *Id.* at pp. 182-91.  Then, on October 21, 2003, Dr. Whalen reported that Plaintiff's back was tender in the lower lumbar spine but that she had a full range of motion of the lumber spine, gait was normal, motor strength was 5/5, straight leg raise was negative, and she could "heel and toe walk bilaterally."  *Id.* at p. 211.  Dr. Whalen recommended continuation of conservative treatments, told Plaintiff to increase her exercises, and further provided her with a back brace.  *Id.*  Subsequently, upon the Agency's request for a medical opinion, Dr. DeCamp declined to evaluate Plaintiff's work-related abilities, stating Plaintiff was being treated by Dr. Whalen.  *Id.* at pp. 166-68 & 218-20.

The aforementioned summary of the medical record demonstrates, as the ALJ found, that Plaintiff retained the RFC to perform the full range of sedentary work but could no longer perform her past relevant work as a retail sales manager due to the amount of weight she had to lift in that position as well as how much time was spent walking, standing, and sitting.[7]  *See* Tr. at pp. 41-61, 100-09, & 127-220.  The RFC assessments provided by Dr. Balagtas as well as the other State Agency Consultive Physician, evaluated alongside the medical records from the treating physicians and specialists, provide the basis for a finding that Plaintiff was able to perform a full range of sedentary work.  *Compare generally id.* at pp. 153-55 & 157-64 *with supra* note 3.  The assessments and medical records indicate that although Plaintiff had some limitations, she could occasionally lift and/or carry ten pounds, frequently lift and/or carry less than ten pounds, stand and/or walk for at least two hours in an eight-hour work day, and sit for approximately six hours in an eight-hour workday, which fits squarely within

---

[7] Plaintiff asserted in her Disability Report as well as during the Hearing that as a retail sales manager, she would have to frequently lift fifty (50) pounds or more, with the heaviest weight lifted being one hundred (100) pounds, and that she had to 1) walk for five hours in an eight-hour workday; 2) stand for one hour in an eight-hour workday; and 3) sit for one-half hour in an eight-hour workday.  *See* Tr. at pp. 38-40 & 102.

the confines of the requirements to perform sedentary work.  *See generally id.* at pp. 127-220; *see also supra* note 3.  Therefore, taking into account the record and the Hearing testimony, the ALJ applied the correct legal standards and his decision is supported by substantial evidence.

### b. Development of the Record

Intertwined with Plaintiff's argument that the ALJ's determination of her RFC was incorrect is Tucker's assertion that the ALJ failed in his duty to fully develop the record regarding her functional limitations when he did not contact her treating physicians for "clarifying evidence."  Pl.'s Br. at p. 9.

Given the remedial intent of the Social Security statute and the non-adversarial nature of benefits proceedings, an ALJ has an affirmative duty, even if the claimant is represented by counsel, to develop the medical record if it is incomplete.  *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999); 20 C.F.R. §§ 404.1512(d) & 416.912(d) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application[.]").  In furtherance of the duty to develop the record, an ALJ may re-contact medical sources if the evidence received from the treating physician or other medical sources is inadequate to determine disability and additional information is needed to reach a determination.  20 C.F.R. at §§ 404.1512(e) & 416.912(e).

Despite Plaintiff's assertion that the ALJ was derelict in his duty, the record documents the ALJ's attempts to correspond with her treating physicians in order to obtain evaluations of her functional ability to do work-related activities.  Dr. Rios-Rivera was contacted to provide a physical RFC assessment.  *See* Tr. at pp. 127-34.  In response, Dr. Rios-Rivera furnished the ALJ with certain medical records and notes, but failed to complete an evaluation of Plaintiff's physical capability to do work-related activities.  *Id.*  Then, on December 10, 2003, a letter was sent to Dr. DeCamp requesting

him to forward medical records and treatment notes from November 2002, and to complete an attached Medical Source Statement (Statement), which was an evaluation form pertaining to Plaintiff's ability to do work-related activities.  *Id.* at pp. 165-71.  However, the Statement was returned without any opinion.  *Id.* at pp. 166-68.  A second attempt was made to retrieve a completed Statement; the Statement was once again returned bare but contained a notation that Plaintiff was being treated by Dr. Whalen.  *Id.* at pp. 218-20.  A third treating physician, Dr. Insel, also stated he could not provide a medical opinion regarding Plaintiff's ability to do work-related activities.  Tr. at p. 138.

Pursuant to the Regulations, an ALJ is required to make every reasonable effort to obtain all medical evidence necessary to determine a claim.  20 C.F.R. §§ 404.1512(d) & 416.912(d).  The evidence in the record clearly establishes that the ALJ fulfilled this duty by attempting to garner the opinions of Drs. Rios-Rivera and DeCamp, though those attempts were ultimately futile as both doctors elected not to provide an evaluation of Plaintiff's capability to do work related activities.  Not only were the treating physicians contacted, but during the Hearing, the ALJ clearly inquired of Plaintiff's counsel if there were any objections to the content of the medical records provided and whether there was any additional evidence to be presented.  *Id.* at p. 33.  No objections were lodged and none of the additional evidence presented by Plaintiff included any RFC assessments by her treating physicians. *Id.*  Thus, the ALJ properly discharged his duties and the record was fully and fairly developed.

### c. Plaintiff's Credibility

Plaintiff contends that the ALJ failed to properly evaluate her credibility with regard to her daily physical limitations and ability to perform substantial gainful activity at any exertional level.  Pl.'s Br. at pp. 9-11.  In terms of Plaintiff's subjective account of the limiting effects of her impairments, the ALJ found her testimony to be partially credible, but "not fully consistent with the generally normal

physical examination findings by her treating physicians." Tr. at p. 26.  The ALJ further noted that no treating physician had provided an opinion supporting disability.  *Id.*

Under 20 C.F.R. §§ 404.1529(a) & 416.929(a), subjective symptoms will be considered in determining a claim for disability to the extent in which such "symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  A claimant's statements about the persistence, intensity, and limiting effects of these symptoms are evaluated in the context of all objective medical evidence, which includes medical signs and laboratory findings.  *Id.* at §§ 404.1529(c) & 416.929(c).  Once medically objective evidence is submitted, the ALJ must identify the severity of the subjective complaints of pain and whether that pain will limit the claimant's ability to work.  *Id.*  "It is well settled that 'a claimant's subjective evidence of pain is entitled to great weight' where . . . it is supported by objective medical evidence."  *Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir. 1992) (quoting *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983)).  However, in a case where subjective symptoms are identified, "the ALJ has discretion to evaluate the credibility of the claimant and to arrive at an independent judgment, in light of the medical findings and other evidence, regarding the true extent of the pain alleged."  *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y 1987).  Where the ALJ resolves to reject subjective testimony with regards to pain and other symptoms, he or she "must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his [or her] determination is supported by substantial evidence."  *Id.* at 608 (citing, *inter alia*, *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1045 (2d Cir. 1984)).  In evaluating a claimant's complaints of pain, an ALJ must consider several factors set forth in the Regulations including:

(i)     [The claimant's] daily activities;
(ii)    The location, duration, frequency, and intensity of [claimant's] pain or other

symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication [claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms;

(v) Treatment, other than medication, [claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms;

(vi) Any measures [claimant] use[s] or ha[s] used to relieve [his or her] pain or other symptoms (e.g., lying flat on [his or her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning [claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) & 416.929(c)(3).

During the Hearing, Plaintiff stated that she experienced headaches and sharp pain from her lower back down through her right leg. Tr. at pp. 36 & 53-54. Due to the pain in her back and leg, she asserted that she had to utilize a cane and back brace, both which caused her discomfort. *Id.* at pp. 43-44. She noted that she was taking several medications but they had a minimal effect on her pain. *Id.* at pp. 45-46. Plaintiff then testified that she could: 1) walk approximately twenty-five steps before the pain became unbearable; 2) sit for fifteen minutes at a time; and 3) lift less than ten pounds. *Id.* at pp. 46-47. She also indicated that she was not able to bend down or kneel. *Id.* at p. 47. Thereafter, Plaintiff testified that she was able to drive short distances, do a small amount of grocery shopping with the aid of her mother, cook only simple meals, dust, fold laundry, read magazines, and watch television on occasion. *Id.* at pp. 37, 48-50, & 53. She also stated that she continued physical therapy exercises for her back even though she no longer attended physical therapy. *Id.* at pp. 42-43. Plaintiff then testified, however, that she was unable to put groceries away, vacuum, clean the floors, change her bed without assistance from her sons, do the laundry (except for some folding), mow the lawn, rake, garden, or partake in many of her old hobbies such as interior decorating and sewing. *Id.* at pp. 48-56. On a normal day, after her son left for school, Plaintiff would return to bed and use a heating pad for a few hours, get up and make some toast, and take a shower, though it was difficult to get ready. *Id.* at pp.

54 & 57-58.

After considering this testimony, the ALJ examined the medical evidence.  The ALJ noted that there was no documentation present in the records from any physician that indicated Plaintiff was "prescribed a cane for her use." *Id.* at p. 26.  The ALJ also stated that during Plaintiff's testimony of her daily activities, she made no mention of the exercises recommended by Dr. Whalen. *Id*. at p. 26. However, during the Hearing, Plaintiff briefly mentioned that she continued exercises for her back as she had done in physical therapy, though she did not testify that she was trying to gradually walk for longer distances, as recommended by Dr. Whalen. *See id.* at pp. 42-43.  The ALJ then stated that Plaintiff portrayed herself as "very incapacitated" and unable to walk for long stretches whereas medical reports from her treating physicians showed no use of the cane and that she had normal gait, stance, and the ability to perform heel and toe walking. *Id.*  Based on all the evidence, the ALJ concluded that Plaintiff's testimony was only partially credible.

Despite Plaintiff's contention that the ALJ erred in finding her to be less than fully credible, the ALJ's assessment of Plaintiff's credibility is corroborated and substantiated by objective medical evidence in the record.  Although it was determined that Plaintiff suffered from L5-S1 degenerative disc disease, Dr. Jones initially indicated that Plaintiff had a fair to good range of motion in her neck, shoulder, and back and that x-rays taken were unremarkable. *Id.* at p. 129.  Drs. Insel, Whalen, and DeCamp found no abnormality in her gait and Dr. DeCamp further stated that Plaintiff walked with a normal stance, she could bend forward to ninety degrees, extension was good, straight leg raises were negative, and muscle strength was 5/5. *Id.* at pp. 138, 205-06, 208, & 211.  Dr. Whalen also found that Plaintiff had a full range of motion of the lumber spine, motor strength was 5/5, straight leg raise was negative, and she could "heel and toe walk bilaterally." *Id.* at p. 211.  Additionally, Dr. Balagtas

reported that Plaintiff had full range of motion in her upper and lower extremities, hand and finger dexterity were intact, and grip strength was 5/5. *Id.* at p. 154-55. Moreover, Dr. Balagtas noted that Plaintiff could groom, dress, and take care of herself as well as drive. *Id.* at p. 153.

Here, not only did the ALJ take into account the medical evidence in the record, but the ALJ considered the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) & 416.929(c)(3) in making his credibility determination. Accordingly, the ALJ applied the correct legal standards and his decision was supported by substantial evidence.

### 2. Step Five-Reliance on the Grids

Plaintiff claims that the ALJ erred at Step Five by relying on the Grids, which directed a "no disability" determination, since she does not retain the RFC to perform work activities at any given exertional level. Pl.'s Br. at pp. 12-13. As such, Plaintiff contends that the Commissioner's burden at Step Five was not met.

If at Step Four the ALJ finds that the claimant cannot perform her past work, then at Step Five, the Commissioner considers whether the claimant can perform any other work available in the national economy based upon the claimant's RFC, age, education, and prior vocational experience. *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *Brown v. Comm'r of Social Security*, 2005 WL 1745655, at *3 (N.D.N.Y. June 30, 2005). Generally, this burden may be satisfied by resorting to the applicable Medical Vocational Guidelines set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 2. *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F.3d 34, 38-39 (2d Cir. 1996)); *Bapp v. Bowen*, 802 F.2d at 604. These Guidelines, aptly referred to as the "Grids," may direct a conclusion as to whether a claimant is disabled if the claimant's "characteristics match the criteria of a particular grid rule." *Rosa v. Callahan*, 168 F.3d at 82 (quoting

*Pratts v. Chater*, 94 F.3d at 38-39); *see also Bapp v. Bowen*, 802 F.2d at 604.  Thus, if "the grid analysis adequately describes a particular claimant's profile, grid determinations are dispositive on the issue of disability."  *Flors v. Massanari*, 2002 WL 100631, at *2 (S.D.N.Y. Jan. 25, 2002).

The applicability of the Grids, rather than the use of a vocation expert, will be determined on a case-by-case basis.  *Bapp v. Bowen*, 802 F.2d at 605; *see also Shipman v. Barnhart*, 2005 U.S. Dist. LEXIS 23875, at *16-17 (S.D.N.Y. Oct. 13, 2005); *Brown v. Comm'r of Social Security*, 2005 WL 1745655, at *3.  Sole reliance on the grids will be malapropos if a claimant suffers from both exertional and non-exertional impairments and the non-exertional impairments significantly diminish the range of work allowed by her exertional impairments.[8]  *Bapp v. Bowen*, 802 F.2d at 605; *Brown v. Comm'r of Social Security*, 2005 WL 1745655, at *3.  In order to "'significantly diminish' the claimant's range of work, a non-exertional impairment must cause an 'additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive [her] of a meaningful employment opportunity.'"  *Brown v. Comm'r of Social Security*, 2005 WL 1745655, at *3 (quoting *Bapp v. Bowen*, 802 F.2d at 606 n.1).  Thus, "the mere existence of a non-exertional impairment [will] not automatically require the production of a vocational expert nor preclude reliance on the guidelines."  *Davila v. Barnhart*, 2004 WL 2914073, at *7 (S.D.N.Y. Dec. 15, 2004) (quoting *Bapp v. Bowen*, 802 F.2d at 603).  If a claimant's range of work is significantly diminished by a non-exertional impairment, then the Commissioner "must introduce the testimony of

---

[8] Exertional limitations refer to restrictions imposed by a claimant's impairment(s) that affect the ability to meet strength demands of a job such as sitting, standing, walking, lifting, carrying, pushing, and pulling. 20 C.F.R. §§ 404.1569a(b) & 416.969a(b).  Non-exertional limitations refer to limitations affecting the claimant's ability to meet the requirements of a job other than strength demands.  *Id*. at §§ 404.1569a(c) & 416.969a(c).  This includes, *inter alia*, limitations or restrictions in functioning due to nervousness, anxiety or depression, maintaining attention or concentration, understanding or remembering detailed instructions, and performing manipulative or postural functions such as reaching, handling, stooping, climbing, crawling, or crouching.  *Id*.; *see also* S.S.R. 83-14, 1983 WL 31254, at * 1, *Program Policy Statement–Titles II and XVI: Capability to do Other Work – The Medical Vocational Rules as a Framework for Evaluating a Combination of Exertional and Nonexertional Impairments* (S.S.A. 1983).

a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Bapp v. Bowen*, 802 F.2d at 603; *Rosa v. Callahan*, 168 F.3d at 82 (quoting *Bapp*); *Brown v. Comm'r of Social Security*, 2005 WL 1745655, at *3 (citations omitted).

In this case, the ALJ noted that Tucker, born on December 16, 1963, was forty years old at the time his decision was rendered.  Tr. at p. 27.  Thus, Tucker was considered to be a younger individual under the Regulations.  *Id.*; 20 C.F.R. §§ 404.1563(c) & 416.963(c).[9]  The ALJ also indicated that Plaintiff completed high school but did not attend college.  *Id.* at pp. 22, 27, & 107.  The ALJ then stated that Plaintiff's past work experience included being a retail sales manager, but the transferability of her skills was not an issue in the case.  *Id.* at pp. 22, 27, & 102.  Based upon the physical exertional requirements of work in the national economy, the ALJ assessed that Plaintiff could perform a full range of sedentary work.  *Id.* at p. 27.  After making this determination, the ALJ consulted the Medical Vocational Guidelines and concluded that under Rules 201.28 and 201.29 of the Guidelines, a finding of "not disabled" was directed.  *Id.*

Taking into account Plaintiff's RFC, age, education, and prior vocational experience, the ALJ correctly utilized the Medical Vocational Guidelines.  Based upon on the four factors to be examined, the Guidelines clearly dictate a finding that Plaintiff was not disabled.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 201.28 & 201.29.[10]  Furthermore, while Plaintiff may have experienced some non-exertional limitations, none of those impairments significantly diminished the range of work allowed by her exertional impairments.  In other words, her non-exertional impairments did not narrow her

---

[9] A person is considered a younger individual if they are under the age of fifty (50).  20 C.F.R. §§ 404.1563(c) & 416.963(c).

[10] The same conclusion would be reached whether Plaintiff's work experience was considered unskilled, semi-skilled, or skilled.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 201.27-.29.

possible range of work as to deprive her of meaningful employment opportunities.

As previously noted, non-exertional impairments are limitations or restrictions in functioning due to nervousness, anxiety or depression, maintaining attention or concentration, understanding or remembering detailed instructions, and performing manipulative or postural functions such as reaching, handling, stooping, climbing, crawling, or crouching. 20 C.F.R. §§ 404.1569a(c) & 416.969a(c). Here, the medical records demonstrate that while Plaintiff was occasionally limited in her abilities to climb, balance, stoop, kneel, crouch, and crawl, there were no manipulative, visual, communicative, nor environmental limitations. Tr. at pp. 155 & 158-61. Drs. DeCamp and Balagtas observed that Plaintiff was able to get onto the examination table without any difficulty and Dr. Balagtas further noted that Plaintiff could groom, dress, and take care of herself as well as drive. *Id.* at pp. 153 & 181. Moreover, Dr. Balagtas reported that Plaintiff had full range of motion in her upper and lower extremities, her hand and finger dexterity were intact, and her grip strength was 5/5. *Id.* at pp. 154-55. Drs. DeCamp and Whalen made similar findings. *Id.* at pp. 205-06 & 211. Even Plaintiff's physical therapist, Donald Clark, stated her lower extremity range of motion and strength were normal. *Id.* at p. 133. Thus, the medical evidence establishes that Plaintiff's range of work was not significantly diminished by her non-exertional limitations. Therefore, reliance upon the Grids was entirely proper.

Therefore, the ALJ applied the correct legal standards and his decision was supported by substantial evidence.

### III. CONCLUSION

In light of the foregoing discussion, it is clear that in finding Tucker was not disabled, the ALJ applied the correct legal standards and his factual findings were supported by substantial evidence. Thus, this Court recommends that decision be upheld.

**WHEREFORE**, it is hereby

**RECOMMENDED**, that the Commissioner's decision denying disability benefits be **AFFIRMED**; and it is further;

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).


Date:   February 20, 2008
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge

*-20-*